UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA ex rel. MARY
BIXLER WOOD, *et al.*,

                              Plaintiffs,

              v.                                                    14 Civ. 4958 (ER)

AVALIGN TECHNOLOGIES, INC., *et al.*,

                              Defendants.


# MEMORANDUM OF LAW IN SUPPORT OF RELATOR'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

**HARTER SECREST & EMERY LLP**
Brian Marc Feldman
1600 Bausch & Lomb Place
Rochester, New York 14604
Telephone No. (585) 231-1201
Facsimile No. (585) 232-2152
bfeldman@hselaw.com
*Attorneys for Relator Mary Bixler Wood*

November 22, 2019

**TABLE OF CONTENTS**

Preliminary Statement.................................................................................................1

STATEMENT OF FACTS .......................................................................................4

ARGUMENT ...........................................................................................................9

POINT I—RELATOR'S COUNSEL IS ENTITLED TO ATTORNEYS' FEES AND
      EXPENSES...................................................................................................9

POINT II—RELATOR'S COUNSEL'S FEES AND EXPENSES ARE REASONABLE...........9

    A.      Counsel's Hourly Rates Are Reasonable..............................................10

    B.      The Time Expended By Counsel Was Reasonable................................14

    C.      Counsel's Expenses Are Reasonable....................................................18

POINT III—THE COURT SHOULD AWARD FEES AND EXPENSES FOR THIS
      MOTION....................................................................................................18

Conclusion ............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adorno v. Port Auth. of N.Y. & N.J.*,
685 F. Supp. 2d 507 (S.D.N.Y. 2010)..................................................................16

*Andrews v. City of New York*,
118 F. Supp. 3d 630 (S.D.N.Y. 2015)..................................................................15

*Barbour v. City of White Plains*,
700 F.3d 631 (2d Cir. 2012)..............................................................................10

*Burlington v. Dague*,
505 U.S. 557 (1992)............................................................................................9

*Candido v. Prosperty 89 Corp.*,
17-CV-3310, 2018 U.S. Dist. LEXIS 171146 (S.D.N.Y. Oct. 3, 2018)................9

*Doe v. Unum Life Ins. Co. of Am.*,
12 Civ. 9327, 2016 U.S. Dist. LEXIS 10706 (S.D.N.Y. Jan. 28, 2016)..............12

*E.S. v. Katonah-Lewisboro School Dist.*,
796 F. Supp. 2d 421 (S.D.N.Y. 2011)................................................................15

*Echevarria v. Insight Medical, PC*,
102 F. Supp. 3d 511 (S.D.N.Y. 2015)................................................................15

*Farbotko v. Clinton Cnty.*,
433 F.3d 204 (2d Cir. 2005)..............................................................................11

*Fox v. Vice*,
563 U.S. 826 (2011)........................................................................................9, 14

*Genger v. Genger*,
14 Civ. 5683, 2015 U.S. Dist. LEXIS 28813 (S.D.N.Y. Mar. 9, 2015) ..............12

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)..............................................................................10

*Grant v. Martinez*,
973 F.2d 96 (2d Cir. 1992)................................................................................10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)........................................................................................9, 14

*Hines v. City of Albany*,
862 F.3d 215 (2d Cir. 2017)..............................................................................17

*In re Bioscrips, Inc. Secs. Litig.*,
   Slip Op., 12-cv-6922, Dkt. 134 (S.D.N.Y. July 26, 2017)......................................................12

*In re Credit Default Swaps Antitrust Litig.*,
   13-md-2476, 2016 U.S. Dist. LEXIS 54587 (S.D.N.Y. Apr. 26, 2016)................................12

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
   02 Civ. 3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010) ..............................12

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998).............................................................................................15

*Matusick v. Erie Cnty. Water Auth.*,
   757 F.3d 31 (2d Cir. 2014)...............................................................................................13

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010).............................................................................................14

*Millea v. Metro-North R. Co.*,
   658 F.3d 154 (2d Cir. 2011).............................................................................................10

*MSC Mediterranean Shipping Co. Holding SA v. Forsyth Kownacki LLC*,
   16 Civ. 8103, 2017 U.S. Dist. LEXIS 49540 (S.D.N.Y. Mar. 30, 2017) ..............................11

*Murphy v. Lynn*,
   118 F.3d 938 (2d Cir. 1997).......................................................................................14, 15

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010).......................................................................................................9, 10

*Quarantino v. Tiffany & Co.*,
   166 F.3d 422 (2d Cir. 1999).............................................................................................14

*Reed v. A.W. Lawrence & Co., Inc.*,
   95 F.3d 1170 (2d Cir. 1996).............................................................................................16

*Simmons v. New York City Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009).........................................................................................9, 10

*Simring v. Rutgers*,
   634 F. Appx. 853 (3d Cir. 2015).......................................................................................16

*Stanczyk v. City of New York*,
   752 F.3d 273 (2d Cir. 2014)...............................................................................................9

*Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs.*,
   13-CV-2548, 2014 U.S. Dist. LEXIS 45625 (S.D.N.Y. Apr. 1, 2014) ..................................13

*Themis Capital v. Democratic Republic of Congo*,
   09 Civ. 1652, 2014 U.S. Dist. LEXIS 124208 (S.D.N.Y. Sept. 4, 2014)........................11, 12

*Townsend v. Benjamin Enters.*,
   679 F.3d 41 (2d Cir. 2012)................................................................................11

*TufAmerica Inc. v. Diamond*,
   12-CV-3529, 2016 U.S. Dist. LEXIS 30645 (S.D.N.Y. Mar. 9, 2016) ..................................12

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
   12 Civ. 9412, 2016 U.S. Dist. LEXIS 165268 (S.D.N.Y. Nov. 30, 2016) ............................11

*United States ex rel. ACT Distrib. Grp., Inc. v. Ready-Built Transmissions, Inc.*,
   03-cv-2150, 2007 U.S. Dist. LEXIS 65963 (S.D.N.Y. Sept. 7, 2007) ................................7, 17

*United States ex rel. Depace v. Cooper Health Sys.*,
   940 F. Supp. 2d 208 (D.N.J. 2013) ......................................................................8

*United States ex rel. Doe v. Penn. Blue Shield, Xact Medicare Serv.*,
   54 F. Supp. 2d 410 (M.D. Pa. 1999) ....................................................................17

*United States ex rel. Feldman v. Van Gorp*,
   03 Civ. 8135, 2011 U.S. Dist. LEXIS 14914 (S.D.N.Y. Feb. 9, 2011) ............................9, 10

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*,
   12-cv-275, 2015 U.S. Dist. LEXIS 49477 (S.D.N.Y. Apr. 15, 2015) ....................9, 10, 11, 12

*United States ex rel. Longhi v. Lithium Power Tech., Inc.*,
   575 F.3d 458 (5th Cir. 2009) ...........................................................................16

*United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*
   793 F. Supp. 2d 1260 (D. Colo. 2011)....................................................................8

*United States ex rel. Vuyyuru v. Jadhav*,
   555 F.3d 337 (4th Cir. 2009) ...........................................................................9

*Venegas v. Mitchell*,
   495 U.S. 82 (1990)......................................................................................8

*Woburn Retirement Sys. v. Salix Pharms., Ltd.*,
   14-CV-8925, 2017 U.S. Dist. LEXIS 132515 (S.D.N.Y. Aug. 18, 2017)..............................12

**STATUTES**

31 U.S.C. § 3730...........................................................................................7, 8, 16

42 U.S.C. § 1988...........................................................................................9

**RULES**

Fed. R. Civ. P. 54 ..................................................................................................8

Relator Mary Bixler Wood ("Relator") moves under Rule 54(d)(2) of the Federal Rules of Civil Procedure for an award of attorneys' fees and expenses following settlements with Defendant CareFusion Corporation ("CareFusion"), as well as Defendants Avalign Technologies, Inc. and Instrumed International, Inc. (collectively, "Avalign") (together, CareFusion and Avalign, as "Defendants") under the False Claims Act (the "FCA" or the "Act").

## PRELIMINARY STATEMENT

Relator filed this case to recover damages and penalties on behalf of the United States and the several States for Defendants' illegal and risky marketing of medical devices never cleared for use by the U.S. Food and Drug Administration ("FDA"). Relator alleged that Defendants knowingly sold those devices to deceived hospitals and other providers throughout the country, who, misled by Defendants, unwittingly risked patients' health by using those devices, as opposed to devices cleared by FDA as safe and effective. Those providers then billed Medicare and other federal healthcare programs for procedures using Defendants' illegal devices, in violation of program rules. Defendants, as Relator alleged, thus simultaneously risked public health and wrongfully depleted federal and State funds. *See* Orig. Complaint, dated July 2, 2014, Dkt. 19.

Relator's claims against Defendants have now succeeded. *See* Stipulation and Order of Settlement and Partial Dismissal as to Defendant CareFusion Corporation ("CareFusion Settlement"), dated May 7, 2019; Stipulation and Order of Settlement and Partial Dismissal as to Defendants Avalign Technologies, Inc., and Instrumed International, Inc., dated Aug. 8, 2019, Dkt. 23 ("Avalign Settlement"). That was no small task. Relator and her counsel spent the better part of the past decade pressing the case against Defendants to that conclusion. The investigation by the United States (the "Government") lasted five years, and much of it was

handled directly by Relator's counsel, from analysis and review to strategy in coordination with the Government.

The settlement grounds are set out in the Government's Complaint-in-Intervention. *See* United States' Complaint-in-Intervention, dated Aug. 6, 2019 ("Gov't Complt."). Neither the federal Medicare program nor the various state-run Medicaid programs reimburse procedures billed using devices that not cleared by FDA. *See id.* ¶¶ 10-33; *see generally id.* at ¶ 33 ("Medicaid programs would not reimburse for treatment involving a device that is not FDA cleared, or that is substantially noncompliant with FDA's safety regulations, for the same reasons that Medicare would not cover such devices."). Nevertheless, Defendants illegally sold non-cleared devices to hospitals and other providers for years. *See id.* ¶ 41; *see also* CareFusion Settlement, ¶ 2(d). These devices included, among other things, surgical vascular bypass devices, *see* Gov't Complt. ¶ 60, surgical devices used for circumcisions, *id.* ¶ 61, and devices used in spinal surgeries, *see id.* ¶ 62. Defendants' "continued marketing and selling of medical devices that were not cleared but . . . were not exempted from clearance as [grandfathered] . . . caused the submission of false or fraudulent claims to the United States for reimbursement of procedures where non-cleared devices were used." *Id.* ¶ 63. And "[t]hese false claims were material to the United States." *Id.* ¶ 64. Accordingly, the United States was entitled to treble damages and penalties under the False Claims Act. *See id.* ¶¶ 66-69.

These settlements are significant for several reasons, beginning with public safety. Relator's efforts led the Government to hold Defendants accountable for serious public health risks. The United States Attorney Geoffrey S. Berman explained:

> It is critical that the devices used in some of the most consequential medical procedures have the required FDA approval or clearance. Unapproved or uncleared devices used in medical procedures present a significant public health

and safety risk, and this Office will continue to hold manufacturers of medical devices accountable for profiting from sales of uncleared devices.

U.S. Dep't of Justice, Press Release (Sept. 13, 2019) *at* www.justice.gov/usao-sdny/pr/manhattan-us-attorney-settles-civil-fraud-claims-against-medical-device-manufacturer ("Avalign Press Release"); *see also* U.S. Dep't of Justice, Press Release (May 13, 2019) *at* www.justice.gov/usao-sdny/pr/manhattan-us-attorney-settles-civil-fraud-claims-against-medical-device-distributor ("CareFusion Press Release"). The FDA added that:

> U.S. patients rely on FDA oversight to ensure that medical devices are safe and effective. When companies fail to follow FDA rules, they put patients' health at risk. We will continue to investigate and bring to justice companies that attempt to evade FDA requirements and jeopardize the public health.

Avalign Press Release; *see also* CareFusion Press Release.

The settlements are significant, moreover, for the admissions by Defendants of their substantial wrongdoing. Avalign admitted that it sold devices without FDA clearances for years on the false premise that the devices were grandfathered in. *See* Avalign Settlement, ¶ 2. In fact, as Avalign has now admitted, its own personnel reached the conclusion years ago that Avalign could not possibly rely on the grandfathering exception. *See id.* ¶ 2(c). And, as both Avalign and CareFusion admitted, CareFusion repeatedly informed Avalign that it lacked sufficient grounds to rely on the grandfathering exception. *See id.* ¶ 2(e); CareFusion Settlement, ¶ 2(e). But both sets of Defendants sold the unapproved and non-cleared devices, illegally, into the United States. *See* Avalign Settlement ¶ 2(l); CareFusion Settlement, ¶ 2(d). Those devices were then used by hospitals and other medical providers for procedures that were billed to federal health care programs for reimbursement. *See* Avalign Settlement ¶ 2(m); CareFusion Settlement, ¶ 2(d).

The settlements are also financially significant. They will return millions of dollars in damages and penalties to the United States of America (the "Government") and the several states (the "States"). Together with the Government, Relator's efforts in investigating and prosecuting these claims has produced settlements of $12.8 million—$10,949,980.50 to the federal Government, plus $1,850,029.48 to the States. *See* CareFusion settlement ($2,821,539.92 to United States; $478,470.08 to States); Avalign Settlement ($8,128,440.60 to United States; $1,371,559.40 to States).

Under the FCA, the settlements triggered Defendants' duty to pay all of Relator's reasonable attorneys' fees and expenses. The settlements preserved Relator's right to recover those fees and expenses, and Relator now moves for such an award.

## STATEMENT OF FACTS

Relator's counsel filed this case on July 2, 2014. At that time, former Assistant United States Attorney Brian M. Feldman and retired Judge Carol E. Heckman at Harter Secrest & Emery LLP ("HSE") teamed up with former Federal Drug Administration, Office of Chief Counsel lawyer Stephen D. Terman and Mason Weeda at Olsson Frank Weeda Terman Matz PC ("OFW"), to lead a team of FCA and medical device attorneys in digging through evidence regarding Defendants to develop the legal case that led to the recent settlements.

Mr. Feldman drew on his unique experience to investigate and develop the case. Before entering private practice, Mr. Feldman has served in the Office of the United States Attorney for the Southern District of New York (the "Office"). *See* Declaration of Brian M. Feldman, ¶ 4. There, as Senior Litigation Counsel and an inaugural member of the Office's Civil Frauds Unit, he pursued financial fraud cases in the wake of the 2008 financial crisis, including the Office's first FCA mortgage-fraud case against a mainstream financial institution, Deutsche Bank. *Id.* He brought valuable experience in working with FDA and the U.S. Department of Health and

Human Services ("HHS"). *Id.*. And, within the Civil Frauds Unit, Mr. Feldman's primary statutory tool was the FCA, which he employed in various investigations. *Id.* Among other efforts, Mr. Feldman played a key role in the Office's focus on admissions, and he secured the first such set of admissions from a defendant in an Office FCA case. *Id.*

Mr. Feldman is a partner at Harter Secrest & Emery LLP, where he chairs the Government and Internal Investigation practice group. *Id.*, ¶¶ 3, 5. He regularly handles FCA cases (including often as defense-side counsel), represents clients in criminal and civil matters with the Office, and litigates in the Southern District of New York (the "District"). *Id.*, ¶ 5. Mr. Feldman graduated from Dartmouth College, then graduated from the University of Virginia School of Law in 2003, clerked with the Honorable Richard C. Wesley of the United States Court of Appeals for the Second Circuit in its 2004 term, and worked in the Office between 2005 and 2011. *Id.*, ¶¶ 4, 6. Mr. Feldman has an AV preeminent rating with Martindale-Hubbell and was selected by the *New York Law Journal* as a rising star in 2018. *Id.*, ¶ 6.

Judge Heckman (retired) is a former magistrate judge in the United States District Court for the Western District of New York. *Id.*, ¶ 7. Prior to serving in that role, she was a trial attorney with the United States Department of Justice, an Assistant United States Attorney with the Office of the United States Attorney for the Western District of New York, and a law clerk for former Chief Judge John T. Curtin of the United States District Court for the Western District of New York. *Id.*, ¶ 8. Judge Heckman graduated from Lawrence University, graduated from Cornell Law School in 1977, and has practiced as a litigator for more than four decades. *Id.* Among many honors, Judge Heckman has an AV preeminent rating with Martindale-Hubbell and received a Lifetime Achievement Award from *Buffalo Business First*. *Id.* Judge Heckman,

during her work on this case, was a partner at Harter Secrest & Emery LLP, and is now a partner at Lippes Mathias Wexler Freidman LLP. *Id.*, ¶ 9.

Mr. Terman is a named principal (partner) at OFW, a law firm in Washington, D.C., which focuses on FDA regulatory work. *See* Declaration of Mason Weeda, ¶ 7. Since 1990, Mr. Terman has concentrated his practice in medical device law and FDA regulatory issues. *Id.*, ¶¶ 9-10. Among other issues, he has worked with companies responding to FDA warning letters and recalls, and he has represented clients in criminal, civil penalty, injunction, and clinical disqualification actions. *Id.*, ¶ 9. Mr. Terman has written and edited book chapters and articles, given hundreds of speeches, and is a frequent lecturer before trade and professional groups. *Id.* Currently, Mr. Terman teaches FDA law to personnel at FDA within the Center for Device and Radiological Health ("CDRH"), which regulates medical device companies. *Id.* Prior to joining OFW, Mr. Terman worked in the Office of Chief Counsel, FDA, between the years of 1976 and 1987, where he served as Associate Chief Counsel for Enforcement. *Id.*, ¶ 7. At FDA, Mr. Terman received the prestigious Award of Merit for his efforts, along with the Commendable Service Award in recognition of his litigation performance. *Id.*, ¶ 8.

Mr. Weeda is another principal (partner) at OFW, with significant experience counseling clients on medical device laws. *Id.*, ¶ 3. He, like Mr. Terman, focuses on advising medical device companies on compliance with FDA laws and regulations. *Id.*, ¶ 4. Pertinent to the claims against CareFusion here, Mr. Weeda has experience advising clients on FDA regulations regarding medical devices, including the marketing applications at issue in this case. *Id.* Among other matters, Mr. Weeda has represented clients in FDA enforcement and administrative matters including responding to FDA warning letter and FDA complaints for injunctive relief. *Id.*, ¶ 5. Like Mr. Terman, Mr. Weeda teaches FDA law to CDRH employees and is a frequent

lecturer on FDA regulatory issues. *Id.* Prior to practicing law, Mr. Weeda worked in a sales and marketing for a biologics manufacturer. *Id.*, ¶ 4.

For nearly six years, as reflected in contemporaneous time records, while this case was under seal, the HSE and OFW teams worked diligently and hand-in-hand with the Office to investigate CareFusion and Avalign to help craft a winning strategy. *See* Feldman Decl.*,* Ex. 1 (time records). That work included various briefings with the Office, including briefings of several new team Assistant United States Attorneys that took this case over from the initial assigned Assistant United States Attorneys. *Id.* That work also included review and analysis of key documents, briefing the Office on those materials, and marshaling those materials into an actionable case. *Id.* Relator's team also played a key role in shaping strategy, consulting with the Office on legal theories and approaches to litigation and settlement. *Id.*

Now, Relator's efforts have secured the return of millions of dollars into federal and state coffers. On May 7, 2019, Relator entered into a stipulation of settlement with CareFusion. *See* CareFusion Settlement. That settlement vindicated Relator. In it, CareFusion admitted its alleged wrongdoing. *See id.*, ¶ 2(a)–(f). As Relator had alleged from the start, CareFusion marketed medical devices within the United States that required FDA clearance, but were never cleared for safe and effective distribution. *See id.* ¶ 2(d). Those devices were then "used in procedures for which providers submitted claims for reimbursement to federal health care programs." *Id.* As CareFusion admitted, it had evidence showing that the devices were not cleared by FDA and could not legally be distributed. *See id.* ¶ 2(e). These actions not only cheated federal health care programs, but also exposed the general public to medical devices never cleared by FDA as safe and effective. To settle these claims, CareFusion paid the Government and States a total principal amount of $3,300,010—$2,821,539.92 for the federal

Government, plus $478,470.08 for the States. Significantly, CareFusion also agreed to cooperate with the Government in its then-ongoing investigations of individuals and entities involved in the wrongdoing alleged in Relator's case, such as Avalign.

Thereafter, on August 9, 2019, Relator entered into a stipulation of settlement with Avalign. *See* Avalign Settlement. In that settlement, Avalign too admitted substantial wrongdoing. *See id.*, ¶ 2(a)–(f). As Relator had alleged from the start, Avalign had marketed medical devices within the United States that required FDA clearance, but were never cleared for safe and effective distribution. *See id.* ¶ 2. Those devices were then "used in procedures for which providers submitted claims for reimbursement to federal health care programs." *Id.* ¶ 2(m). As Avalign admitted, it had evidence showing that the devices were not cleared by FDA and could not legally be distributed. *See id.* ¶ 2(c)-(h). The Government put it succinctly in its complaint-in-intervention: "Indeed, it was not possible for [these] devices to qualify as [grandfathered] because [Avalign] was founded no earlier than 1985" and "could not have, therefore, marketed any devices prior to May 28, 1976, as required under applicable FDA regulations." Gov't Complt. ¶ 42. To settle these claims, Avalign paid the Government and States a total principal amount of $12,000,000—$8,128,440.60 for the federal Government, plus $1,371,559.40 for the States.

None of this would have been possible without the efforts of Relator and her counsel. This is reflected in the 21% relator's share awarded by the Government in this case. That percentage "depend[s] upon the extent to which the person substantially contributed to the prosecution of the action" or settlement of the claim. 31 U.S.C. § 3730(d)(1). In this District, the 21% awarded here represents the high-water mark of relator shares. It reflects the highest level of contribution by Relator and Relator's counsel. Those contributions, along with the

efforts of the Government, succeeded in redressing wrongdoing by Defendants, holding them accountable, obtaining admissions and cooperation, and ultimately recovering millions for the United States and the several States.

## A R G U M E N T

### POINT I

### RELATOR'S COUNSEL IS ENTITLED
### TO ATTORNEYS' FEES AND EXPENSES.

The Court's entry of the settlements triggers Relator's counsel's rights to reasonable fees and expenses. The FCA provides, for both judgments and settlements, that the Relator shall receive "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees." 31 U.S.C. § 3730(d)(1) (same; applicable to Relator following the Government's "settlement of [an intervened] claim"); *see, e.g.*, *United States ex rel. ATC Distrib. Grp., Inc. v. Ready-Built Transmissions, Inc.*, No. 03-cv-2150 (GWG), 2007 U.S. Dist. LEXIS 65963, at *1-2, 24 (S.D.N.Y. Sept. 7, 2007) (awarding fees following FCA settlement). Such fees and expenses are paid in addition to any relator share award, *see* 31 U.S.C. § 3730(d)(1)-(2), and irrespective of any contingency arrangement. *See, e.g.*, *United States ex rel. Depace v. Cooper Health Sys.*, 940 F. Supp. 2d 208, 215-17 (D.N.J. 2013); *United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp*. 793 F. Supp. 2d 1260, 1264 (D. Colo. 2011) (holding contingency of share award "does not justify reducing the lodestar"); *accord Venegas v. Mitchell*, 495 U.S. 82, 90 (1990) (fees provision "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer").

Here, Relator preserved all rights to fees and costs in each settlement. Paragraph 7 of both settlements provides that "nothing in this Stipulation shall preclude Relator from seeking to recover Relator's reasonable expenses and attorneys' fees and costs pursuant to 31 U.S.C.

§ 3730(d)." CareFusion Settlement, ¶ 7; Avalign Settlement, ¶ 7. Relator moves for those fees, costs, and expenses now on the timeframe set by this Court.

**POINT II**

**RELATOR'S COUNSEL'S FEES
AND EXPENSES ARE REASONABLE.**

This Court calculates fees based on prevailing market rates for reasonable time expended. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *United States ex rel. Feldman v. Van Gorp*, 03 Civ. 8135 (WHP), 2011 U.S. Dist. LEXIS 14914, at *5 (S.D.N.Y. Feb. 9, 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).[1] This is referred to as the presumptively reasonable fee. *Id.*; *see also Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009); *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) ("In calculating attorney's fees, the district court must first determine the lodestar— the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee.") (internal quotation marks omitted).

The presumption that such a fee is reasonable is strong. *See Burlington v. Dague*, 505 U.S. 557, 562 (1992). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection," so "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The strengths of the presumptively reasonable methodology, as the Supreme Court has instructed, are not only that it "produces an award that *roughly* approximates the fee that the prevailing attorney would have

---

[1] Federal courts apply similar standards under the FCA as under 42 U.S.C. § 1988, which was at issue in *Hensley*. *See United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 12cv275 (DLC), 2015 U.S. Dist. LEXIS 49477, at *3 (S.D.N.Y. Apr. 15, 2015) (applying *Hensley* case law); *United States ex rel. Feldman*, 2011 U.S. Dist. LEXIS 14914, at *5 (same); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356-57 (4th Cir. 2009) (same).

received if he or she had been representing a paying client who was billed by the hour in a comparable case," but also that it is "readily administrable," and, unlike a multi-factored approach, is "objective" and "produces reasonably predictable results." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010) (emphasis in original; quotation marks omitted).

Here, Relator seeks fees amounting to a fraction of the overall the settlement amount. But fees would be due even if they were *not* proportional to the recovery; the Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Barbour v. City of White Plains*, 700 F.3d 631, 635 (2d Cir. 2012); *see, e.g.*, *Grant v. Martinez*, 973 F.2d 96, 102 (2d Cir. 1992). Indeed, "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (emphasis in original). The fee is reasonable so long as it is based on market rates and hours reasonably expended. As set forth below, that is the case here.

### A. Counsel's Hourly Rates Are Reasonable.

The "forum rule" dictates reasonable rates. *Simmons*, 575 F.3d at 174. "According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* (quotation marks omitted); *see also United States ex rel. Fox Rx, Inc.*, 2015 U.S. Dist. LEXIS 49477, at *3 (Cote, J.) (observing, in FCA case, that "courts look first to the rates commonly charged by attorneys for similar work in the district in which the court sits"). "Further, in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court . . . should be current rather than historic hourly rates." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quotation marks omitted); *accord Perdue*, 559 U.S. at 556. The appropriate rates are thus current market rates in this District. *See United States ex rel.*

*Feldman*, 2011 U.S. Dist. LEXIS 14914, at *4-7 (Pauley, J.) (using New York City market rates, even though relator's counsel was located elsewhere).

In reviewing District rates, the Court should consider the complexity of this matter, as well as counsel's skill and experience. Doing so permits the Court to make a "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *United States ex rel. Fox Rx, Inc.*, 2015 U.S. Dist. LEXIS 49477, at *4-5 (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)). Both the False Claims Act and FDA laws are complex, specialized areas of the law. The HSE team was led by Mr. Feldman, a former Assistant U.S. Attorney in the Southern District of New York recognized as a premiere FCA litigator; and the OFW team was led by Mr. Terman, a former FDA Office of Chief Counsel lawyer, who is a named principal of one of the leading FDA firms in the country. To determine appropriate market rates, this Court may take judicial notice of hourly rates approved by other cases involving similarly complex matters. *Townsend v. Benjamin Enters.*, 679 F.3d 41, 59 (2d Cir. 2012).

Partner rates in this District "in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation," and support the lower $800 per hour partner rate Relator seeks here. *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, 12 Civ. 9412 (PAE), 2016 U.S. Dist. LEXIS 165268, at *26 (S.D.N.Y. Nov. 30, 2016) (awarding partner rate of $1,055 per hour); *see also Vista Outdoor, Inc. v. Reeves Family Trust*, 16 Civ. 5766 (JSR), 2018 U.S. Dist. LEXIS 102224, at *15-16 (S.D.N.Y. May 24, 2018) (awarding partner rate of $1,170 per hour); *MSC Mediterranean Shipping Co. Holding SA v. Forsyth Kownacki LLC*, 16 Civ. 8103 (LGS), 2017 U.S. Dist. LEXIS 49540, at *8 (S.D.N.Y. Mar. 30, 2017) (awarding partner rate of $1,048.47 per hour); *see also Themis Capital v. Democratic Republic of Congo*,

09 Civ. 1652 (PAE), 2014 U.S. Dist. LEXIS 124208, at *21-22 (S.D.N.Y. Sept. 4, 2014) (approving average partner rates of $871.04/hour as reasonable in complex litigation).  In a 2015 FCA case, *United States ex rel. Fox Rx, Inc.*, Judge Cote observed that average partner billing rates were then $942 per hour in this District.  2015 U.S. Dist. LEXIS 49477, at *5-7 (approving $836/hour partner rate in a 2015 FCA case).[2]

Precedents also support the hourly associate rates of $400 per hour, and senior associate rate of $500 per hour, which Relator seeks here.  Again back in 2015, Judge Cote approved rates of $631.75 for senior year associates (eighth years) and $541.50 for junior associates (fourth years), while finding that average associate hourly billing rates were well above those amounts. *See id.*  Other cases have similarly approved associate rates ranging from $400–$700 per hour. *See, e.g.*, *Vista Outdoor*, 16 Civ. 5766 (JSR), 2018 U.S. Dist. LEXIS 102224, at *15-16 (S.D.N.Y. May 24, 2018) (awarding associate rates up to $693 per hour, *i.e.*, 75% of $925); *In re BioScrip, Inc. Secs. Litig.*, 273 F. Supp. 3d at 505 (Nathan, J.) (approving associate hourly rates between $450 and $550); *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (DLC), 2016 U.S. Dist. LEXIS 54587 (S.D.N.Y. Apr. 26, 2016) (approving associate rates), *approving* 13-md-2476 (DLC), Dkt. 482 at 5 (S.D.N.Y. filed Jan. 29, 2016) (application showing associate rates up to $714 per hour); *Themis Capital v. Democratic Republic of Congo*, 09 Civ. 1652

---

[2] *See also Woburn Retirement Sys. v. Salix Pharms., Ltd.*, 14-CV-8925 (KMW), 2017 U.S. Dist. LEXIS 132515, at *15 (S.D.N.Y. Aug. 18, 2017) (approving partner rates of $995); *In re BioScrip, Inc. Secs. Litig.*, 273 F. Supp. 3d 474, 503 (S.D.N.Y. 2017) (Nathan, J.) (approving partner rates between $700 and $975); *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (DLC), 2016 U.S. Dist. LEXIS 54587, at *54 (S.D.N.Y. Apr. 25, 2016) (approving partner rates), *approving* 13-md-2476 (DLC), Dkt. 135 at 5 (S.D.N.Y. filed Apr. 8, 2016) (application showing approving partner rates between $834 and $1,125); *Regeneron Pharms., Inc. v. Merus, N.V.*, 14-cv-1650 (KBF), 2018 U.S. Dist. LEXIS 115661, at *12 (S.D.N.Y. June 25, 2018) (approving partners rates up to $908 per hour); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 02 Civ. 3400 (PED), 2010 U.S. Dist. LEXIS 119702, at *75 (S.D.N.Y. Nov. 8, 2010) (approving partner rates of $950).

(PAE), 2014 U.S. Dist. LEXIS 124208, at *21-22 (S.D.N.Y. Sept. 4, 2014) (approving average associate hourly rate of $505.55). The $400 and $500 hourly rates sought here fit comfortably within those precedents.

As for paralegals and litigation support staff, precedents support the hourly rates of $100–$150, which Relator seeks here. *See TufAmerica Inc. v. Diamond*, 12-CV-3529 (ANJ), 2016 U.S. Dist. LEXIS 30645, *17-18 (S.D.N.Y. Mar. 9, 2016) ("Recent cases in this district suggest that the prevailing rate for paralegals is between $100 and $200 per hour."); *Doe v. Unum Life Ins. Co. of Am.*, 12 Civ. 9327 (LAK) (AJP), 2016 U.S. Dist. LEXIS 10706, at *15 (S.D.N.Y. Jan. 28, 2016) (approving $200 paralegal rate); *Genger v. Genger*, No. 14 Civ. 5683 (KBF), 2015 U.S. Dist. LEXIS 28813, at *5-6 (S.D.N.Y. Mar. 9, 2015) (approving a paralegal rate of $260); *Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs.*, 13-CV-2548 (KMW) (JLC), 2014 U.S. Dist. LEXIS 45625, at *25 (S.D.N.Y. Apr. 1, 2014) ("The Court finds that $200 an hour is reasonable and in line with the prevailing market rate for paralegals in this district.").

Relator thus seeks rates comfortably within precedents in this District. Relator requests partner rates, at the lower range of the cited precedents, at $800 per hour. For associates, Relator seeks hourly rates, again at the lower range of the cited District precedents, at $400 for associates and $500 for senior associates. And, for paralegals and litigation support staff, Relator seeks rates between $100–$150 per hour, likewise below District precedents.

### B.     The Time Expended By Counsel Was Reasonable.

Relator documented the time spent prosecuting the case against Defendants. "Applications for fee awards should generally be documented by contemporaneously created time records that specify for each attorney[] the date, the hours expended, and the nature of the work done." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014). Here, attached to the Feldman and Terman declarations, Relator has submitted contemporaneous time records

documenting the work done by each attorney and staff timekeeper in support of Relator's case.[3] *See* Feldman Decl., ¶¶ 27-31; Weeda Decl., ¶¶ 17-27. The time excludes hours that counsel would not typically charge a paying client. *See id.*, Feldman Decl., ¶ 32; Weeda Decl., ¶ 22.

Counsel exclude any tasks unnecessary to the prosecution of claims against Defendants. *See* Feldman Decl., ¶¶ 32-35; Weeda Decl., ¶¶ 22-25. Relator thus seeks an award for time spent exclusively pursuing each Defendant (*e.g.*, time investigating each set of Defendants), as well as time spent on issues common to each Defendant (*e.g.*, marshaling the legal theory). Moreover, Counsel has subtracted and not included any time spent exclusively on claims that have not (yet, at least) been successful, such as the claims declined by the Government. *See* Feldman Decl., ¶ 35 (explaining subtraction of more than $119,000 for work on such claims); Weeda Decl., ¶ 25. And, for the Court's convenience, Relator is providing a breakdown of the fees for tasks common to both sets of Defendants in prosecuting the settled claims, as well as the fees for tasks specific to each set of Defendants in prosecuting the settled claims.[4]

---

[3] Relator has redacted privileged information from the billing entries. Before submitting this motion, the United States Attorney's Office requested that Relator redact certain entries containing Government equities. To that end, Relator prepared redactions with common interest privileged and law enforcement privileged material highlighted for the Government, and the Government noted no exceptions. Those redactions are now reflected in the entries submitted.

[4] The Avalign fees amount to $2,200,215 ($420,600 in Avalign-specific fees, plus common fees of $1,779,615); the CareFusion fees amount to $1,924,140 ($144,525 in CareFusion-specific fees, plus common fees of $1,779,615). *See* Feldman Decl., Ex. 3. We provide these breakdowns for the Court's convenience, even though cases hold defendants jointly and severally liable for the *entire* amount of fees and costs incurred. *See, e.g.*, *United States ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, 2:96-1676-12, 2002 U.S. Dist. LEXIS 26986, *19-20 (D.S.C. May 23, 2002) ("[C]onsidering the unequivocal congressional intent of encouraging *qui tam* suits and the unique pro-plaintiff structure of litigation under the Act, this Court refuses to apportion the award of attorneys' fees among the defendants"); *United States ex rel. Wiser v. Geriatric Psychological Servs.*, Y-96-2219, 2001 U.S. Dist. LEXIS 12930, at *13 (D. Md. Mar. 22, 2001) ("Considering . . . the clear congressional policy of encouraging qui tam suits under the Act, and the unusual structure of qui tam litigation on the plaintiff's side, the Court declines to introduce fee apportionment methods used under other statutes.").

All of this time is fully compensable. "A court should compensate [a] plaintiff for the time his [or her] attorney reasonably spent in achieving [a] favorable outcome, even if the plaintiff failed to prevail on every contention." *Fox*, 563 U.S. at 834 (quotation marks omitted); *McDaniel v. County of Schenectady*, 595 F.3d 411, 425 (2d Cir. 2010). "Attorney's fees may be awarded for unsuccessful claims as well as successful ones . . . where they are 'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories.'" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see id.* at 427 (holding that "successful and unsuccessful claims were sufficiently related so as to make a lodestar reduction based on lack of success on [a] claim inappropriate") (quotation marks omitted); *see also Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997) ("lack of success on some . . . claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof"). As the Supreme Court has observed:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

*Hensley*, 461 U.S. at 435.

This doctrine governs Relator's time spent advancing common arguments against Defendants. Relator is entitled to compensation for her work that advanced the settled claims with CareFusion and that equally advanced the claims against Avalign.[5] The legal questions were common and not severable; and Relator would have had the same work to complete even if the co-defendant claims had been excluded from the outset. Fees for such inextricably related

---

[5] To be clear, counsel has *excluded* all time spent on tasks that advanced the case only against a non-settling defendant (*e.g.*, DePuy Synthes), or on tasks that advanced the case only for an ultimately declined (*i.e.*, non-settled) claim against the settling Defendants. Relator is not seeking compensation at this stage for any such time. *See* Feldman Decl., ¶¶ 33-35; Weeda Decl., ¶¶ 22-25.

tasks are thus properly compensated, as the Second Circuit has held. *See Murphy*, 118 F.3d at 952 (awarding full compensation for time spent on successful claims and unsuccessful claims, which were against other defendants, when the work stemmed from a common core of facts); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) (observing, where claims were based on "common core of facts" and "related legal theories" such that "much of counsel's time was devoted generally to the litigation as a whole," party is entitled to "a fee award for all time reasonably expended"). The Second Circuit has held that, even where claims against some defendants are ultimately unsuccessful, if it is infeasible to "separate by any rational means the portion of the time occupied in connection with the claims and defendants which did not survive," then an award of all such common fees is appropriate. *Murphy*, 118 F.3d at 952. Here, under controlling Second Circuit precedent, Relator is entitled to fees for all the time cited in prosecuting the settled claims, even if some of that work would equally advance other, as-of-yet unsuccessful, claims.

An award of full time for work on issues common to the successful claims and any as-of-yet unsuccessful or abandoned claims, moreover, is consistent with the practice of recent reported decisions in this District. *See, e.g.*, *Balu v. City of New York*, 12 Civ. 1071 (KPF), 2016 U.S. Dist. LEXIS 29264, *17-18 (S.D.N.Y. Mar. 8, 2016) (refusing to reduce fees where "claims were inextricably intertwined" as court could not "say that counsel would have spent less time had the case been framed" without the unsuccessful claim); *Andrews v. City of New York*, 118 F. Supp. 3d 630, 644 (S.D.N.Y. 2015) (Stein, J.) (refusing to reduce fees where the "legal theories underlying" successful and unsuccessful claims were "inextricably intertwined" and "not severable"); *Echevarria v. Insight Medical, PC*, 102 F. Supp. 3d 511, 520 (S.D.N.Y. 2015) (Failla, J.) (same); *E.S. v. Katonah-Lewisboro School Dist.*, 796 F. Supp. 2d 421, 428 (S.D.N.Y.

2011) (Preska, J.) (refusing to reduce fees "because Plaintiffs' successful and unsuccessful claims were inextricably intertwined and involved common legal and factual questions"); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 512 (S.D.N.Y. 2010) (Chin, J.) ("Where the successful and unsuccessful claims were interrelated and required essentially the same proof, a reduction in the number of hours is not appropriate") (quotation marks omitted).[6] Such time should be awarded in full here, too.

Thus, as set out in the supporting declarations, this Court should award fees of $2,225,690. *See* Feldman Decl., Ex. A; Feldman Decl., ¶ 36.

### C.    Counsel's Expenses Are Reasonable.

In addition to attorneys' fees, the False Claims Act provides that a successful relator shall recover his costs. *See* 31 U.S.C. § 3730(d)(1)-(2). Relator has documented $4,188.19 of expenses reasonably incurred in litigating this lawsuit. *See* Feldman Decl., Ex. 2. Those expenses are comprised primarily of shipping and copying costs. *Id.* Relator is entitled to such expenses.

### POINT III

### THE COURT SHOULD AWARD FEES
### AND EXPENSES FOR THIS MOTION.

It has long been settled in this Circuit that "attorneys' fees for the preparation of the fee application are compensable." *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996); *see also Hines v. City of Albany*, 862 F.3d 215, 222-23 (2d Cir. 2017) (prevailing parties entitled to attorneys' fees for litigating fee award). This principle extends to successful

---

[6] This doctrine applies with full force in FCA cases, like this one. *See, e.g.*, *Simring v. Rutgers*, 634 F. Appx. 853, 860-61 (3d Cir. 2015) (compensating counsel for interrelated FCA work, even as to preparation of pleadings to join New Jersey to the action, even though that effort proved unsuccessful); *United States ex rel. Longhi v. Lithium Power Tech., Inc.*, 575 F.3d 458, 475-76 (5th Cir. 2009) (holding counsel entitled to fees for successful and unsuccessful FCA claims "based on related legal theories").

relators under the False Claims Act. *See United States ex rel. ATC Distrib. Grp., Inc. v. Ready-Built Transmissions, Inc.*, No. 03-cv-2150 (GWG), 2007 U.S. Dist. LEXIS 65963, at *16-18 (S.D.N.Y. Sept. 7, 2007); *see also United States ex rel. Doe v. Penn. Blue Shield, Xact Medicare Serv.*, 54 F. Supp. 2d 410, 420 (M.D. Pa. 1999) ("Relators are entitled to an award of the fees incurred while pursuing the petition for attorney's fees.").

Litigating this motion has required and will continue to require work by counsel. Relator requests reimbursement for all such fees and expenses and will submit time records and expenses with its reply. Under binding precedent, those fees should be included in the Court's fee and expense award.

## CONCLUSION

This Court should enter an order awarding Relator $2,229,878.19 in attorneys' fees and expenses (*i.e.*, $2,225,690.00 in fees, plus $4,188.19 in expenses), plus any additional fees and expenses incurred in litigating this motion.

Respectfully submitted,

Dated:     November 22, 2019        HARTER SECREST & EMERY LLP

By:   s/ Brian M. Feldman
Brian M. Feldman
1600 Bausch and Lomb Place
Rochester, NY 14604-2711
Telephone No. (585) 231-1201
Facsimile No. (585) 232-2152
bfeldman@hselaw.com
*Counsel for Relator Mary Bixler Wood*